IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02516-CBS

TERRY JACKSON,
        Plaintiff,
v.

BENJAMIN ANDREW GATTO, a Federal Agent of the United States, and
UNKNOWN FEDERAL LAW ENFORCEMENT AGENTS of the Fort Carson Military Police,
        Defendants.

---

## ORDER ON DEFENDANT GATTO'S MOTION TO DISMISS

---

Magistrate Judge Shaffer

This matter comes before the court on Defendant Andrew Gatto's Motion to Dismiss (doc. # 29), filed on February 28, 2014.  Plaintiff Terry Jackson filed her Response to Defendant's Motion to Dismiss (doc. #32) on March 18, 2014, which was followed by Defendant Gatto's Reply in Support of Motion to Dismiss (doc. #35) on April 1, 2014.

Ms. Jackson commenced this litigation on September 16, 2013.  Her original Complaint (doc. #1) named as defendants the United States of America and Benjamin Gatto, and asserted six claims for relief under the Fourth Amendment and common law tort theories.  Defendants moved to dismiss the original Complaint on January 30, 2014, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  More specifically, Defendant Gatto argued that the claims brought against him in his individual capacity failed to properly allege a Fourth Amendment violation and/or were barred by the doctrine of qualified immunity.  The United States moved to dismiss for lack of subject matter jurisdiction, arguing that Plaintiff's negligence claims were barred by sovereign immunity or the discretionary function exception incorporated in the Federal Tort

1

Claims Act.  *See* 28 U.S.C. § 2680(a).

Rather than responding to that motion, Ms. Jackson filed an Amended Complaint (doc. # 28) on February 28, 2014, in which she asserted "Constitutional and Civil Rights" claims against Defendant Gatto and "Unknown Federal Law Enforcement Agents of the Fort Carson Military Police" pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971).  Ms. Jackson's First Claim for Relief alleges that "[o]n or about September 22, 2011, in the absence of offensive physical force, the threat of force, attempted flight or threatened flight," Defendant Gatto used excessive force in violation of the Fourth Amendment by "pulling [Ms. Jackson] from her vehicle, forcing her against her vehicle, twisting her head, and intentionally shooting her with a Taser gun."  *See* Amended Civil Complaint, at ¶ 70.  Plaintiff's Second Claim for Relief alleges, as a separate Fourth Amendment violation, that on the same day, Defendant Gatto "and/or other agents of the Fort Carson Provost Marshall's office,

> unreasonably detained Plaintiff by incapacitating her by shooting her with a Taser gun and, following her release from emergency treatment at the Evans Army Community Hospital, by handcuffing her, taking her to a military police station and handcuffing her to a metal bench for a prolonged period of time."

*Id.* at ¶ 73.  In her prayer for relief, Ms. Jackson "requests judgment against the United States of America, against Benjamin Gatto, or against both of them."[1]

---

[1]During a telephone status conference with this court on March 10, 2014, Plaintiff's counsel clarified that the Amended Complaint should be construed to seek judgment against Defendant Gatto and unnamed members of the Fort Carson Military Police, and not against the United States.  *See* Courtroom Minutes/Minute Order (doc. #31).  Although Defendant Gatto's pending Motion to Dismiss challenges Plaintiff's request for a judgment against the United States, that argument is moot in light of Plaintiff's concession that she is not seeking a judgment against the United States.  Indeed, the Amended Complaint does not name the United States as a separate defendant or purport to bring a claim against the United States for money damages pursuant to the Federal Torts Claim Act.

Defendant Gatto has moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6), contending that Plaintiff has failed to allege facts that would "clearly establish" that his use of force on September 22, 2011 was excessive or that Ms. Jackson's subsequent detention violated the Fourth Amendment.  Defendant Gatto further argues that neither his "use of force, including use of a Taser, against Plaintiff, who was noncompliant and resisting her apprehension, nor Plaintiff's subsequent arrest and detention violate clearly establish law or constitutional rights of which a reasonable person would have known."  Not surprisingly, Ms. Jackson insists that Officer Gatto's actions, as alleged in the Amended Complaint and depicted on a contemporaneously created audio/video recording, were "'unreasonable' under established Fourth Amendment standards," thus precluding his reliance on the doctrine of qualified immunity.

On January 30, 2014, this matter was referred for disposition to this Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court has reviewed the pending motion and related briefing and exhibits, the entire case file, and the applicable law, and is sufficiently advised in the premises.  The court does not believe that oral argument would assist its evaluation of the arguments raised in the parties' briefs.  For the following reasons, I am granting in part and denying in part Defendant Gatto's motion.

## ANALYSIS

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d

1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic

recitation of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).

   To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to

state a claim to relief that is plausible on its face."  *Id.*  As the Tenth Circuit explained in *Ridge*

*at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical

possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is

insufficient; the complaint must give the court reason to believe that *this* plaintiff has a

reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the

plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or

she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting

*Bell Atlantic Corp.*, 550 U.S. at 556).  A complaint must set forth sufficient facts to elevate a

claim above the level of mere speculation.  *Id.*  "Nevertheless, the standard remains a liberal one,

and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

these facts is improbable and that a recovery is very remote and unlikely.'" *Jordan v. Cooley*,

No. 13-cv-01650-REB-MJW, 2014 WL 923279, at 1(D. Colo. March 10, 2014) (quoting *Dias v.*

*City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).

   Generally, a court considers only the contents of the complaint when ruling on a Rule

12(b)(6) motion.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Exceptions to this

general rule include:  documents incorporated by reference in the complaint; documents referred

to in and central to the complaint, when no party disputes their authenticity; and "matters of

which a court may take judicial notice." *Id.*, quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *Cf. Gilbert v. Bank of America Corporation*, No. 11-cv-00272-BLW, 2012 WL 4470897, at *2 (D. Idaho Sept. 26, 2012) (noting that a court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming a motion to dismiss into a motion for summary judgment). If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which the court may consider in ruling on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1281, 1384 (10th Cir. 1997).

In the Amended Complaint, Ms. Jackson alleges that on September 22, 2011, "Officer Gatto activated the audio/video device in his vehicle and recorded the majority of the events that are the subject of this complaint." *See* Amended Complaint, at ¶ 33. Defendant Gatto offered a copy of this audio/video recording as Exhibit A to his first Motion to Dismiss (*see* doc. # 25) and cites that same audio/video recording (hereinafter "Defendant's Exhibit A") in the current Motion to Dismiss, reasoning that the recording is "central to [Ms.Jackson's] claims" and therefore can be considered in deciding the pending motion "without transforming it into a motion for summary judgment." *See* Defendant's Motion to Dismiss (doc. #29), at 2 n. 1. In his Response to Defendant's Motion to Dismiss (doc. # 32), Plaintiff's counsel "agrees with Defendant's position with respect to the Court considering the audio/video tape that was referenced in Plaintiff's Complaint." Neither side appears to challenge the authenticity of the audio/video recording. *Cf. Scott v. Harris*, 550 U.S. 372, 379 (2007) (in a case involving allegations of excessive force in connection with a high-speed chase, the Supreme Court considered the contents of a videotape "capturing the events in question" for which there were

5

no allegations or indications of doctoring or tampering in any way). Plaintiff further asks me to consider, on the same basis, "the verbatim transcript of the audio/video that is attached" to her Response and previously provided to defense counsel.[2]

At the parties' request, I have reviewed the time-stamped audio/video recording of the events on September 22, 2011 and will consider this exhibit in deciding the pending motion.[3] *Cf. Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *10 (N.D. Ill. Sept. 24, 2013) (in deciding a motion to dismiss, the court considered an "interrogation video in conjunction with [the plaintiff's] complaint," but noted that "it still views the video in the light most favorable to the Kohs, who are the nonmovants"). My review of that recording does not require that I analyze or decide Defendant's motion under a Rule 56 standard. *See, e.g., Chamberlain v. City of White Plains*, No. 12-CV-5142 (CS), _ F. Supp.2d _, 2013 WL 6477334, at *7 (S.D.N.Y. Dec. 10, 2013) (holding that the court would consider audio-video recordings captured by the camera mounted on the defendant's taser without converting the motion to dismiss to a motion for summary judgment, as neither party contested the appropriateness of the court's consideration of that recording); *Winston v. Bauer*, No. 09-cv-224-

_____

[2]In his Reply, Defendant Gatto does not concede, explicitly or implicitly, that Plaintiff's "verbatim transcript" is complete or accurate. In that regard, I note that Plaintiff's proffered transcript describes some comments by Ms. Jackson as 'inaudible.' However, most of the comments made by Officer Gatto and Ms. Jackson are plainly audible on the recording that both parties wish me to consider in the context of the pending motion. I am further convinced that those few inaudible portions of the recording would not materially change the court's analysis under Rule 12(b)(6) or my application of prevailing judicial precedents.

[3]Although the court has viewed the audio/video recording, I have only considered the physical movements of the parties and those statements that are plainly audible. It would be inappropriate for the court, in deciding a motion to dismiss, to characterize the demeanor or motivation of either party over the course of the September 22, 2011 incident, as those characterizations almost certainly would be subject to reasonable dispute.

SJM, 2010 WL 3811314, at *5 (W.D. Pa. Sept. 21, 2010) (in deciding defendant's motion to dismiss plaintiff's excessive force claim, the court considered video footage of the incident that had been submitted in support of the motion to dismiss; the videotape in question had been referenced in the complaint and was integral to certain of plaintiff's claims).

As noted, Defendant Gatto has raised the defense of qualified immunity to Ms. Jackson's claims. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, __ U.S. __, 132 S.Ct. 1235, 1244 (2012) (internal quotation marks and citations omitted). *See also Duncan v. Gunter*, 15 F.3d 989, 992 (10th Cir. 1994) (same) internal quotation marks and citations omitted). Stated differently, the affirmative defense of qualified immunity "protects all but the plainly incompetent [government official] or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 269 F.3d 1179, 1185 (10th Cir. 2001).

Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id. See also Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established when the alleged violation occurred). However, "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment," as the court must consider only the facts alleged in the plaintiff's complaint and must accept those well-pled facts as true and view the allegations in the light most favorable to the plaintiff. *Sanchez v. Labate*, No. 13-2109, __ F. App'x __, 2014 WL 1623050, at *2 (10th Cir. April 24, 2014).[4]

A.      *Whether Plaintiff Has Properly Alleged A Fourth Amendment Violation.*

        The first step in assessing the constitutionality of Defendant Gatto's actions "is to determine the relevant facts," *cf. Scott*, 550 U.S. at 378, which, in the context of this motion to dismiss, means Ms. Jackson's well-pled allegations, as well as the actions and statements clearly captured on the audio/video recording.

        The Amended Complaint alleges that on September 22, 2011, Plaintiff was driving her

---

        [4] In contrast, under Rule 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" and the non-movant fails to come forward with sufficient evidence to demonstrate the existence of such a genuine dispute. *Cf. Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3rd Cir. 2013). In short, the burden on the non-moving party is significantly different depending upon whether the moving party is seeking relief under Rule 12(b)(6) or Rule 56.

son, Victor Williams, to work at the Post Exchange on Fort Carson Military Reservation. *See* Amended Complaint, at ¶¶ 28 and 29. At the same time, Defendant Gatto was parked in his patrol car near the intersection of Chiles and Evans Avenues performing traffic duties. *Id.* at ¶ 30. At approximately 9:55 am, Officer Gatto allegedly "clocked" Plaintiff's car traveling in excess of the posted speed limit and switched on the flashing lights of his vehicle. *Id.* at ¶¶ 31 and 32. In response, Ms. Jackson pulled into a parking lot and parked her car. *Id.* at ¶ 32. After approaching the driver's side window, Office Gatto told Ms. Jackson that he had observed her speeding. *See* Defendant's Exhibit A, at time-code 9:56:36. Ms. Jackson responded that she had not seen any posted limits and thought she had been driving within the speed limits. *See* Amended Complaint, at ¶ 34. Officer Gatto asked Ms. Jackson for her license, registration and insurance. *Id.* at ¶ 36. In response, Ms. Jackson said that she was sorry, but asked if Officer Gatto could let her off with a warning because she was trying to get her son to work on time.[5] *Id.* at ¶ 34.

When Officer Gatto asked again for her license, registration and proof of insurance, Ms. Jackson answered that she "[didn't] have it" and that Officer Gatto should "just write me up." *See* Defendant's Exhibit A, at time-code 9:57:20. Plaintiff then furnished her driver's license, but continued to insist that she did not have her registration or proof of insurance. *See* Amended Complaint, at ¶ 37. Although Ms. Jackson eventually provided her registration and some insurance documents, Officer Gatto noted that the proof of insurance had expired. *See*

---

[5]Ms. Jackson can be heard on the audio/video recording telling Officer Gatto that her son would lose his job if he was late to work one more time. Shortly after initiating the traffic stop and before the parties' physical altercation occurred, Officer Gatto allowed Ms. Jackson's son to leave the scene and walk to work.

Defendant's Exhibit A, at time-code 9:58:37.  Defendant explained to Ms. Jackson that he could

not let her drive her car unless he could verify that insurance coverage was current.  *Id.* at time-

code 9:59:22 and 10:02:22.  Officer Gatto eventually spoke to Ms. Jackson's insurance carrier by

phone and confirmed that her policy was current.  *See* Amended Complaint, at ¶ 39.  Based on

the time-code on the audio/video recording, approximately 16 minutes and 30 seconds elapsed

from the time that Officer Gatto pulled Ms. Jackson over for speeding and he confirmed that

Plaintiff had valid insurance.  During this period of time, Ms. Jackson remained in and was not

asked to leave her car.  However, the Amended Complaint acknowledges that "from the outset of

the traffic stop Plaintiff asked to be allowed to proceed and argued with Officer Gatto." *Id* at ¶

41.

        After speaking with Plaintiff's insurance representative and momentarily returning to his

patrol car, Officer Gatto came back to Ms. Jackson's car and returned her documents, explaining

that he was "going to cut [her] a break on the insurance" even though failure to carry proof of

insurance was a "traffic misdemeanor" that required a mandatory court appearance.  *See*

Defendant's Exhibit A, at time-code 10:13:25.  Ms. Jackson responded that her husband had

printed the insurance documents, but then asked Officer Gatto if he could contact the Post

Exchange or prepare a document explaining that Ms. Jackson was responsible for her son's

delayed arrival at work.  *Id.* at time-code 10:13:44.  Officer Gatto said that he would not provide

that statement and that Ms. Jackson could "deal with that on your own." *Id.* at time-code

10:14:02.

        When Ms. Jackson continued to press her request for assistance in placating her son's

employer, Officer Gatto pointed out that Plaintiff initially claimed that she did not have the

required documentation. *Id.* at time-code 10-14-18. Defendant then accused Ms. Jackson of "l[ying] to a police officer by saying you didn't have the documents before you looked." *Id.* at time-code 10:14:31. Ms. Jackson repeatedly said "okay." At that point, Officer Gatto asked Ms. Jackson for her current address because that information was "required by law." *Id.* at time-code 10:14:45. Rather than immediately providing her address, Ms. Jackson responded with the apparent non-sequitur: "did you have a good day?" *Id.* at time-code 10:14:54. *See also* Amended Complaint, at ¶ 43. Officer Gatto said that he was going to ask one more time for Ms. Jackson's valid address "or then I'm going to apprehend you for failure to identify."[6] *See* Defendant's Exhibit A, at time-code 10:15:03. Approximately 20 seconds later, Officer Gatto contacted his dispatcher and requested "roaming cover." *Id.* at time-code 10:15:25.

Although Ms. Jackson pointed out that she had given Officer Gatto her documents and that the required information was "all here," Defendant responded that "it's too late." *Id.* at time-code 10:15:43. *See also* Amended Complaint, at ¶¶ 45 and 46. At 10:15:54, Officer Gatto opened the driver's side door, reached into the vehicle and again told Plaintiff to "step out of the vehicle."[7] When Ms. Jackson said "don't touch me, get off of me," Officer Gatto said: "I will tase you. Step out of the vehicle now. You are under apprehension." *Id.* at time-code 10:16:00.

_____

[6] On the audio/video recording, Officer Gatto can be heard asking Ms. Jackson for her current address five times in the span of approximately 40 seconds. Plaintiff concedes that Officer Gatto "asked for her local address several times," but "[she] did not verbally provide her address." *See* Amended Complaint, at ¶¶ 42-43.

[7] The audio/video recording captures Officer Gatto issuing twelve separate commands for Ms. Jackson to step out of her car over the span of approximately 60 seconds. The Amended Complaint acknowledges that "Officer Gatto ordered Plaintiff to get out of the vehicle and she refused," and that "Plaintiff resisted" when Defendant Gatto attempted to "pull [her] out of the vehicle." *See* Amended Complaint, at, ¶¶ 47 and 48.

After unsuccessfully attempting to physically remove Ms. Jackson from her car, Officer Gatto again contacted his dispatcher requesting "roaming cover." *Id.* at time-code 10:16:10. Defendant told Ms. Jackson two more times to step out of her car, and then said that "I will come in here and grab you, or I will tase you. Which do you want? I'm going to tase you." *Id.* at time-code 10:16:18. When Ms. Jackson said that she had high blood pressure and that being tased would "kill me," Officer Gatto said "then it's your fault." *Id.* at time-code 10:16:29. *See also* Amended Complaint, at ¶ 47. Although Ms. Jackson insisted that she was not dangerous, Officer Gatto responded that he "[didn't] care," that she was not complying with his orders and he was "going to tase you."[8] *Id.* at time-code 10:16:39. At this time, Officer Gatto stepped away from Ms. Jackson, drew his taser and pointed it in her direction. Ms. Jackson called Officer Gatto a "crazy idiot" but began getting out of her vehicle. *Id.* at time-code 10:16:42.

Over the next approximately 20 seconds, Officer Gatto and Ms. Jackson physically struggled beside the open driver's side door of the car. During this exchange, Officer Gatto grabbed Plaintiff with his right hand and then reached around her neck with his left hand. Although Ms. Jackson did not comply with Defendant's commands and maintained contact with the car with her left hand, the audio/video recording does not show Plaintiff taking any aggressive action against Officer Gatto. After Defendant was unable to handcuff Ms. Jackson or take her to the ground, he stepped away from Plaintiff's car and began reaching for his taser. While still holding her car with her left hand, Ms. Jackson asked Officer Gatto, "what is you doing." *Id.* at time-code 10:17:02.

---

[8]On the audio/video recording, Officer Gatto gave Ms. Jackson four separate taser warnings in the span of 40 seconds. Notably, however, each of those warnings was coupled with a command for Plaintiff to step out of her car.

At this point, Officer Gatto stepped farther away from Ms. Jackson's car and out of camera view.  While facing across the roof of her car and away from Officer Gatto, Ms. Jackson asked "you know what?"  *Id.* at time-code 10:17:05.  Officer Gatto instructed Ms. Jackson to "put your hands behind your back now."  *Id.* at time-code 10:17:07.  Although Ms. Jackson did not comply with that specific command, she continued to look away from Officer Gatto's direction and said nothing.  Approximately three second later, Officer Gatto discharged his taser, striking Ms. Jackson in the back with the taser darts.[9]  *Id.* at time-code 10:1710.  From the audio/video recording, it appears that Officer Gatto gave Ms. Jackson no taser warnings after she exited her vehicle, but did very visibly remove the weapon from its holster and point it in Plaintiff's direction in the few seconds preceding the discharge.[10]

The Amended Complaint further alleges that Ms. Jackson was taken from the scene of the traffic stop to Evans Army Community Hospital.  *See* Amended Complaint, at ¶ 61.  At the hospital, Ms. Jackson "was placed in handcuffs by Defendant Gatto and/or other unidentified federal agents," and subsequently transferred "to the Military Police station where she was hand-cuffed by Defendant Gatto and/or other unidentified federal agents, to a metal bench for about an

---

[9]"A taser has two functions, 'dart mode' and 'drive stun mode.'" *Estate of Booker v. Gomez*, 745 F.3d 405, 414 n. 10 (10th Cir. 2014).  "In dart mode, a taser shoots probes into a subject and overrides the central nervous system."  *Id.*  When a taser is used in drive stun mode, the operator removes the dart cartridge "and pushes two electrode contacts located on the front of taser directly against the victim," which delivers an electric shock to the victim that does not override the victim's central nervous system."  *Id.*

[10]Later in the audio/video recording, Officer Gatto can be heard telling another officer at the scene that after he initially attempted to restraint Ms. Jackson's hands behind her back, he "told her I was going to Tase her unless she got into the position I wanted to.  She didn't.  So I tased her."  If Officer Gatto issued that final warning, it was not audible on the audio/video recording.

hour." *Id.* at ¶¶ 62 and 63.  While handcuffed to the bench, Ms. Jackson "cried continually" and "was not allowed to speak directly with her husband or daughter." *Id.* at ¶ 66.[11]

1.   Plaintiff's Excessive Force Claim

The Fourth Amendment's "central requirement" is one of reasonableness.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989) (emphasizing that seizure "alone is not enough for § 1983 liability; the seizure must be unreasonable") (internal quotation marks omitted).  "[C]ourts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (citation omitted).  To state a constitutional violation, a plaintiff must allege both that a defendant's conduct constituted a seizure, and that the seizure was unreasonable. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

Similarly, a claim that law enforcement officers employed excessive force to effect a

_____

[11]In his client's Response to Defendant's Motion to Dismiss, Ms. Jackson's counsel states that his client cannot "recall who handcuffed her to the bench."  This uncertainty may be problematic since a party asserting a *Bivens* claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Aschroft v. Iqbal*, 556 U.S. 662, 676 (2009) (acknowledging that personal participation in the alleged constitutional violation is required to support a *Bivens* claim).  Plaintiff's counsel insists that his client "only recalls (distinctly) that officers at the station were joking and laughing about the Tasing incident."  That "fact" is not alleged in the Amended Complaint and, therefore, cannot be considered by this court in deciding the instant motion. *Cf. Coleman v. Sentinel Transportation, LLC*, Civ. Action No. H-09-1510, 2009 WL 3834438, at *6 n.4 (S.D. Tex. Nov. 16, 2009) (noting that while plaintiff's response brief provided additional factual context for his claims, "[b]ecause those facts are not alleged in the complaint, they are not properly considered in deciding a Rule 12(b)(6) motion challenging the sufficiency of the pleadings").

seizure is governed by the Fourth Amendment's "objective reasonableness" standard.[12]

*Plumhoff v. Rickard*, _ U.S. _, 2014 WL 2178335, at *7 (U.S. May 27, 2014).  In assessing an

excessive force claim under the Fourth Amendment, the court must consider

> the totality of the circumstances and, in doing so, three considerations are often in
> play:  "[1] the severity of the crime at issue, [2] whether the suspect poses an
> immediate threat to the safety of the officers or others, and [3] whether he is
> actively resisting arrest or attempting to evade arrest by flight."

*Wilson v. City of Lafayette*, 510 F. App'x 775, 778 (10th Cir. 2013) (quoting *Graham v. Connor*,

490 U.S. 386, 396 (1989).[13]  The court must carefully balance the "nature and quality of the

intrusion on the individual's Fourth Amendment interests against the countervailing

governmental interests at stake," *Graham*, 490 U.S. at 396, and make that evaluation "from the

perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"

*Plumhoff*, 2014 WL 2178335, at *7 (quoting *Graham*, 490 U.S. at 396).  As the Tenth Circuit

noted in *Medina*,

> [I]n order to constitute excessive force, the conduct arguably creating the need for
> force must be immediately connected with the seizure and must rise to the level of
> recklessness, rather than negligence.  The primary focus of our inquiry, therefore,
> remains on whether the officer was in danger at the exact moment of the threat of
> force.

---

[12]*See Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (acknowledging that 'the reasonableness inquiry in excessive force cases overlaps with the qualified immunity question, which also requires the application of a reasonableness standard in order to determine whether an officer violated a clearly established right" and suggesting that "this overlap renders a qualified immunity defense of less value when raised in defense of an excessive force claim").

[13]*See also Zia Trust Co. Ex rel. Causey v. Montoya*, 597 F.3d 1150, 1154 (10th Cir. 2010) (in applying the "objective reasonableness" standard in a case alleging excessive force in violation of the Fourth Amendment, the court may also consider:  (1) where the suspect had a weapon; (2) the suspect's compliance with police commands; (3) whether any hostile motions were made toward the officers; (4) the distance separating the officers and suspect; and (5) the manifest intentions of the suspect).

252 F.3d at 1133 (citing *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001), and cases cited therein). *Cf. Hastings v. Barnes*, No. 04-5144, 252 F. App'x 197, 203 (10th Cir. 2007) ("The reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment they used force but also on whether the officers' own conduct during the seizure unreasonably created the need to use such force.").

As to the first *Graham* factor – the severity of the crime – the audio/video captures Officer Gatto's statement that he is allowing Ms. Jackson to leave with only a warning, notwithstanding her failure to have valid proof of insurance which Defendant characterized as a traffic misdemeanor. Thereafter, when Ms. Jackson repeatedly failed to disclose her current address, Officer Gatto placed her "under apprehension" for failing to provide her current address as requested and for "lying" to a police officer, offenses that Defendant later described on the audio/video recording as "misdemeanors." I note that Ms. Jackson's own Amended Complaint acknowledges that she resisted Defendant's initial attempts to remove her from the vehicle. *See* CRS § 18-8-103 (classifying resisting arrest as a class 2 misdemeanor). While the court is not condoning Plaintiff's actions, none of the foregoing offenses can be described as serious. *Cf. Herrera v. Bernalillo County Board of County Commissioners*, No. 09-2042, 361 F. App'x 924, 928 (10th Cir. Jan. 20, 2010) (observing that "resisting, evading or obstructing [a police] officer" is not a "severe" crime); *Giannetti v. City of Stillwater*, Nos. 06-6085, 06-6094, 216 F. App'x 756, 763 (10th Cir. Feb. 12, 2007) (conceding that the decedent's original misdemeanor traffic offense was not severe). This factor strongly favors Plaintiff Jackson.

The second *Graham* factor asks whether the suspect posed an immediate threat to the

safety of the officer or others.  Here again, this factor favors Ms. Jackson.  An objective review of the audio/video recording does not reveal any immediate threat to Officer Gatto.  Granted, the interactions between Ms. Jackson and Officer Gatto became more heated as the traffic stop progressed, particularly after Ms. Jackson refused to comply with Defendant's initial commands to leave her car.  The escalating nature of the parties' interaction is evident in Officer Gatto's requests for backup assistance.  However, the audio/video recording does not capture any actions by Ms. Jackson that seem to place Officer Gatto in physical danger, or any indication that Plaintiff possessed or brandished anything that could be considered dangerous or a weapon.  Although Ms. Jackson was not compliant when told to place her hands behind her back, on the audio/video recording she doesn't appear to strike or attack Officer Gatto.  Indeed, Ms. Jackson's left hand remains on her vehicle through the brief tussle.  Officer Gatto had positioned himself several feet from Ms. Jackson and was not in any physical danger when he elected to fire his taser.

The third *Graham* factor – whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight – could be considered inconclusive in light of the facts alleged in the Amended Complaint and the audio/video recording.  Ms. Jackson concedes that she physically resisted Officer Gatto's efforts to remove her from the vehicle.  Although Ms. Jackson certainly frustrated Officer Gatto's brief attempt to apply handcuffs, her resistence largely took the form of non-cooperation.  The audio/video recording shows that in the moments immediately preceding her tasing, Ms. Jackson was not aggressively confronting Officer Gatto, but rather had turned her back to the Defendant.  Officer Gatto also requested assistance that was acknowledged and acted upon by the dispatcher.  *Cf. Harper v. Rose*, No. 09-CV-153-TC, 2012

17

WL 1150463, at *7 (D. Utah April 5, 2012) (noting that while the plaintiff may have been a potential threat, he was not an immediate threat at the time he was tased; also noted that the arrival of a backup officer decreased any existing threat to the defendant and increased the officers' options for taking the plaintiff into custody).

On the limited record before the court, a reasonable jury could conclude that Officer Gatto's discharge of his taser was disproportionate to the need and, therefore, violated the Fourth Amendment.  When the court applies the Rule 12(b)(6) standard and considers the limited record in a light most favorable to Plaintiff, I find that the Amended Complaint plausibly alleges a claim under the Fourth Amendment for use of excessive force.

2.      Plaintiff's Wrongful Detention Claim

Defendant Gatto has moved to dismiss Plaintiff's Second Claim for Relief, which alleges a Fourth Amendment claim based on Ms. Jackson's "unlawful detention."  As factual support for that claim, Plaintiff contends that Defendant Gatto and/or other members of the Fort Carson Provost Marshal's office "unreasonably detained" her by "handcuffing her, taking her to a military police station and handcuffing her to a metal bench for a prolonged period of time during which the Plaintiff was emotionally traumatized and physically depleted."  *See* Amended Complaint at ¶ 73.  Defendant Gatto argues that Plaintiff has failed to state a Fourth Amendment claim in the absence of any factual allegations that would plausibly suggest that her detention after being released from the hospital was either "extraordinary" or "unusually harmful to [her] privacy or . . . physical interests."  Plaintiff's Response to Defendant's Motion to Dismiss offers only a passing rebuttal to Defendant's challenge to the Second Claim for Relief.

The parties apparently agree that Plaintiff's Second Claim is governed by the Fourth Amendment's "objective reasonableness" standard. As the Supreme Court has acknowledged,

> Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of [the Fourth Amendment]. An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

*Whren v. United States*, 517 U.S. 806, 809-10 (1996) (internal citations omitted). Similarly, "if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that plaintiff's warrantless arrest for the minor traffic offense of failing to wear a seat belt did not violate the Fourth Amendment).

The Amended Complaint and audio/video recording set forth facts that establish probable cause for Ms. Jackson's arrest on September 22, 20122. It is undisputed that Ms. Jackson did not have proof of current insurance at the time she was stopped by Defendant Gatto. *See* Amended Complaint, at ¶ 37. *Cf.* CRS § 42-40-1409(3) (noting that "when requested to do so following any lawful traffic contact, . . . an owner or operator of a motor vehicle. . . shall present to the requesting officer immediate evidence of a complying [insurance] policy or certificate of self insurance in full force and effect as required by law;" a violation of the foregoing provision is a class 1 misdemeanor traffic offense). Plaintiff further concedes that she initially refused to obey Officer Gatto's order to step out of her car, and then resisted his efforts to remove her from the vehicle. *See* Amended Complaint, at ¶¶ 47 and 48. *Cf.* CRS § 18-8-103(1) (a person

commits resisting arrest if he or she knowingly prevents or attempts to prevent a peace officer,

acting under color of his official authority, from effecting an arrest of that person by using or

threatening to use physical force against the officer, or by using any other means which creates a

substantial risk of causing bodily injury to the officer).

The Second Claim does not appear to challenge the legality of Ms. Jackson's arrest, but

rather the nature and circumstances of her detention once she arrived at the military police

station.   While "every Fourth Amendment case . . . turns upon a 'reasonableness' determination"

and arguably "involves a balancing of all relevant factors,"

> [w]here probable cause has existed, the only cases in which we have found it
> necessary actually to perform the "balancing" analysis involved searches or
> seizures conducted in an extraordinary manner, usually harmful to an individual's
> privacy or even physical interests.

*Whren*, 517 U.S. at 818.   In this case, Ms. Jackson contends that her detention violated the

Fourth Amendment because she was kept handcuffed to a bench for about an hour "while still

suffering the physical effects of the Tasing," when she "posed no threat to anyone," and was

denied access to her husband and daughter.   I find, as a matter of law, that Ms. Jackson has failed

to allege sufficient facts in her Amended Complaint to plausibly show that she was detained in

"an extraordinary manner" under a Fourth Amendment balancing analysis.

The fact that Ms. Jackson was handcuffed to a bench for approximately an hour does not,

without more, establish a Fourth Amendment violation.   *Cf. Atwater*, 532 U.S. at 354-55 (finding

that the circumstances surrounding the plaintiff's arrest and booking were not so extraordinary as

to violate the Fourth Amendment where she was "handcuffed, placed in a squad car, and taken to

the local police station, where she was asked to remove items of clothing and placed in a cell

alone for about an hour before being released on bond); *Petersen v. Farnsworth*, 371 F.3d 1219,

1224 (10th Cir. 2004) ( holding that plaintiff's one hour detention while he was completing the jail booking process did not violate the Fourth Amendment, even though at one point the plaintiff was handcuffed to a bar attached to the booking counter; the court concluded that the amount of force used to restrain the plaintiff during the booking process was minimal, as was the length of detention); *Chortek v. City of Milwaukee*, 356 F.3d 740, 745-46 (7th Cir. 2004) (holding that while the plaintiffs were arrested only for violating a ticket scalping ordinance, and while their arrests may have been humiliating, their detention was no more harmful than the normal custodial arrest; plaintiffs were detained for between three and fourteen hours, were subjected to a thorough search, placed in a holding cell, were not allowed to make phone calls, and suffered anxiety knowing their spouses would be concerned about their whereabouts). *Compare Ames v. Brown,* No. 05-6389, 2006 WL 1875374, at *1-3 (10th Cir. July 7, 2006) (holding that the manner of plaintiff's detention was objectively unreasonable where he was handcuffed, his clothing was removed and he was left naked from the waist down and forced to stand outside his trailer as officers completed their search; plaintiff was then transported to the jail, forced to walk from the patrol car into the jail, and shackled to a bench in a cell until his booking was completed).

It bears repeating, that the pending motion is brought under Rule 12(b)(6), which requires the court to construe the allegations and limited record in a light most favorable to Ms. Jackson. Nevertheless, I find that Plaintiff's Second Claim fails to properly allege a Fourth Amendment violation and must be dismissed.

B.    *Whether Plaintiff's Fourth Amendment Right Was Clearly Established*

To address the second prong of the qualified immunity analysis, this court must consider whether the rights asserted by Ms. Jackson was clearly established as of September 22, 2011. "The clearly established inquiry examines whether the contours of the constitutional right were so well-settled, in the particular circumstances presented, that every reasonable . . . official would have understood that what he is doing violates that right. *Lane v. Yohn*, No. 12-cv-02183-MSK-MEH, 2013 WL 4781617, at * 3 (D. Colo. Sept. 6, 2013) (internal quotation marks and citation omitted). "[T]he salient question . . . is whether the state of the law at the time of [the] incident provided 'fair warning'" to Defendant Gatto that his alleged conduct was unconstitutional. *Cf. Tolan v. Cotton*, __ U.S. __, 134 S.Ct. 1861, 1866 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Where, as in this case, the plaintiff is alleging unreasonable conduct in violation of the Fourth Amendment, "courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Id.*

"To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented." *Id.* "It is not necessary for the plaintiff to adduce a case with identical facts, but the plaintiff must identify some authority that considers the issue not as a broad general proposition, but in a particularized sense . . . ." *Id.* There must be "a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Duncan*, 15 F.3d at 992 (internal quotation marks and citations omitted).

1.    <u>Plaintiff's Excessive Force Claim</u>

In *Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007), the Tenth Circuit addressed an excessive force claim in the context of a roadside arrest.  In that case, the plaintiff's car was pulled over on a busy interstate highway, and she was cited for speeding and for failing to wear a seat belt.  While Officer Frazier was attempting to explain the citation he was issuing, Ms. Mecham continued talking to her mother on the telephone.  When Officer Frazier warned that he would arrest Ms. Mecham if she failed to cooperate and put down her phone, Ms. Mecham refused to comply with that warning.  While waiting for a tow truck to arrive to impound the car, Ms. Mecham said that she would remain inside her vehicle, notwithstanding the officer's instruct to get out of the car.  After a backup officer arrived, Officer Frazier told Ms. Mecham to get out of the car or he would physically remove her.  When Ms. Mecham again refused to comply, Officer Frazier sprayed her in the face with pepper spray, opened the car door and physically removed her from the vehicle.  *Id.* at 1202-03.

In finding that the defendant officers were entitled to qualified immunity, the Tenth Circuit in *Mecham* noted that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Id.* at 1205 (quoting *Graham*, 490 U.S. at 396).  The appellate court acknowledged that an officer making an arrest "may inevitably 'use some degree of physical coercion or threat thereof to effect it.'"  *Id.*  Under the particular facts in *Mecham*, the Tenth Circuit concluded that the defendants' actions were objectively reasonable, particularly given the plaintiff's repeated failure to comply with Officer Frazier's commands, the fact that she remained in her car with the keys, thereby exercising control over the vehicle at all times, and given that the encounter occurred on the narrow

shoulder of a busy highway with high speed traffic passing only a few feet away.  The Tenth

Circuit also held that even if the officers' use of pepper spray was not objectively reasonable,

Ms. Mecham had failed to show that Fourth Amendment law was clearly established at the time

of the violation.  After considering the cases cited by Ms. Mecham, the Tenth Circuit panel

concluded those earlier cases were factually distinguishable and not "sufficiently analogous to

satisfy the particularized context necessary to support liability."  *Id.*

The facts in surrounding Ms. Jackson's arrest and Officer Gatto's discharge of his taser

are distinguishable from *Mecham*.  Ms. Jackson brought her car to a stop in a parking lot, which

did not expose Officer Gatto to dangers associated with on-coming or high-speed traffic.

Moreover, at the time she was tased, Ms. Jackson was standing outside her car and posed no

realistic threat of flight or danger to Officer Gatto, who had stepped well back from the driver's

side of the vehicle.

Three months after the decision in *Mecham*, the Tenth Circuit in *Casey v. City of Federal

Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) held that an police officer's immediate discharge

of her taser without warning against a non-violent misdemeanant who was not actively resisting

or attempting to flee was objectively unreasonable under the Fourth Amendment.[14]  The Tenth

Circuit noted that the officer in *Casey* had not given the plaintiff an opportunity to comply with

commands prior to discharging her taser and concluded that "it is excessive to use a Taser to

control a target without having any reason to believe that a lesser amount of force – or a verbal

command – could not exact compliance."  *Id.* at 1286.  As for whether the Fourth Amendment

right was clearly established, the panel in *Casey* held that "an officer's violation of the *Graham*

_____

[14]As in the instant case, the taser used in *Casey* fired wire-attached hooks that logged in
and delivered a shock to the plaintiff.

reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification for acting as [defendant] did." *Id.  See also Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665-667 (10th Cir. 2010) (holding that the trial court properly denied defendant's claim of qualified immunity where the officer was investigating a non-injurious assault and discharged his taser without warning at a female plaintiff who was not actively aggressive, was not threatening the officer, did not have a weapon and who was approximately six feet from the officer when he fired).

In the instant case, Officer Gatto gave Ms. Jackson multiple warning that she might be tased.  However, those warns were coupled with a specific instruction that Plaintiff should step outside her car.  While Ms. Jackson failed to comply with Officer Gatto's final command to place her hands behind her back, that instruction did not include a warning that non-compliance would result in her tasing.  Certainly, there was no warning to suggest that Ms. Jackson would be tased almost immediately.

The Tenth Circuit found in *Wilson v. City of Lafayette*, No. 11-1403, 510 F. App'x 775, 777 (10th Cir. Feb. 13, 2013), that prior to August 2006, no published decisions from the circuit courts or the Supreme Court "would have clearly alerted a reasonable officer" that discharging a taser at a suspect who was fleeing or actively resisting arrest and might be reaching for a weapon would amount to constitutionally excessive force.

> To the contrary, as the Sixth Circuit held after conducting an exhaustive survey of relevant cases from across the county, "prior to May 2007 (and for several years after), no cases in any circuit held that officers used excessive force by tasing suspects who were actively resisting arrest, even though many of them . . . were suspected of innocuous crimes, posed little risk of escape and had not yet physically harmed anybody."  This class of cases undoubtedly embraces ours: Mr. Wilson was resisting arrest by fleeing from officers after they identified themselves – even if the crime of which he was suspected was not itself a violent

one, he was likely to apprehended eventually, and he hadn't harmed anybody yet.
*Id.* (internal citations omitted).  As noted previously, Ms. Jackson was not actively resisting,
fleeing or even looking in Officer Gatto's direction when he fired his taser.

I recognize that the foregoing cases present factual differences from the altercation
involving Ms. Jackson and Officer Gatto.  However, those distinguishing facts do not bar the
court from finding that Ms. Jackson's Fourth Amendment right to be free from excessive force
was clearly established as of September 22, 2011.  *See, e.g., Currier v. Doran*, 242 F.3d 905, 023
(10th Cir. 2001) (to defeat a defense of qualified immunity, a plaintiff is not required "to find a
case with exact corresponding factual circumstances").  *See also Estate of Booker v. Gomez*, 745
F.3d 405, 427 (10th Cir. 2014) ("because excessive force jurisprudence requires an all-things-
considered inquiry with careful attention to the facts and circumstances of each particular case,
there will almost never be a previously published opinion involving exactly the same
circumstances").

Defendant cannot dispute that the legal norms or *Graham* factors were clearly established
on September 22, 2011.  *See, e.g., Harper v. Rose*, No. 09-CV-153-TC, 2012 WL 1150463, at *5
(D. Utah April 5, 2012) ("the fact that use of a Taser might constitute excessive force was clearly
established as early as *Casey*").  Plaintiff has come forward with factual allegations that Officer
Gatto discharged his taser even though she was only accused of committing minor infractions,
was outside of her car, was not in a position to flee, and was not assaulting or posing a threat to
the Defendant.  Given these allegations and the actions depicted on the audio/video recording, I
find on this limited record that Ms. Jackson's Fourth Amendment right was clearly established
on September 22, 2011.  Accordingly, I cannot grant Officer Gatto relief under the qualified

immunity doctrine or dismiss the First Claim for Relief under Rule 12(b)(6).

      2.     <u>Plaintiff's Unlawful Detention Claim</u>

Having concluded that Ms. Jackson's Second Claim fails to plausibly allege a constitutional violation, the court need not reach the "clearly established" prong of qualified immunity to conclude that dismissal of that claim is correctly granted. Where a Fourth Amendment violation is not properly alleged, "the inquiry ends and the officer is entitled to qualified immunity." *Wilder*, 490 F.3d at 813.

## CONCLUSION

For the foregoing reasons, Defendant Gatto's Motion to dismiss is denied in part and granted in part. The court finds that the Amended Complaint, when coupled with the audio/video recording of the September 22, 2011 incident, sets forth sufficient facts to plausibly state a Fourth Amendment claim for excessive force. Therefore, the court will deny Defendant Gatto's motion as it relates to the First Claim for Relief. Although the court is denying Defendant's motion as it relates to the First Claim, nothing in this Order is intended to preclude Defendant Gatto from renewing his qualified immunity defense in motion for summary judgment. *Cf. Barnett v. Mount Vernon Police Department*, No. 12-1381, 523 F. App'x 811, 814 (2d Cir. May 3, 2013). *See also Springer v. Albin*, No. 09-5088, 398 F. App'x 427, 431(10th Cir. Oct. 15, 2010) (noting that the court must employ a different analysis under Rule 12 and Rule 56, and thus a defendant is not precluded from raising the defense of qualified immunity both in a motion to dismiss and a later motion for summary judgment). Defendant Gatto's motion is granted to the extent that Ms. Jackson's Second Claim fails to set forth sufficient facts to

plausibly assert a Fourth Amendment violation.  The Second Claim for Relief is hereby

dismissed.

DATED this 17th day of June, 2014

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge